UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **TYLER E. K.,**  *Plaintiff,*  v.  **COMMISSIONER OF SOCIAL SECURITY,**  *Defendant.* | **Civil Action No. 21-9623**  **OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

**THIS MATTER** comes before the Court on Plaintiff Tyler E. K.'s ("Plaintiff") request for review of Administrative Law Judge Mark Solomon's (the "ALJ") decision regarding Plaintiff's application for Disability Insurance Benefits ("DIB"), pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g). For the reasons set forth in this Opinion, the Commissioner of Social Security's (the "Commissioner") decision is **AFFIRMED**.

**I.   STANDARD OF REVIEW AND APPLICABLE LAW**

   **A.   Standard of Review**

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. § 405(g). The Commissioner's application of legal precepts is subject to plenary review, but his factual findings must be affirmed if they are supported by substantial evidence. Markle v. Barnhart, 324 F.3d 182, 187 (3d Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate." Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also McCrea v. Comm'r of Soc.

1

Sec., 370 F.3d 357, 360 (3d Cir. 2004) (explaining that substantial evidence is "less than a preponderance").

"[T]he substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004). Accordingly, the standard places a significant limit on the district court's scope of review: it prohibits the reviewing court from "weigh[ing] the evidence or substitut[ing] its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992). Therefore, even if this Court would have decided the matter differently, it is bound by the ALJ's findings of fact so long as they are supported by substantial evidence. Hagans v. Comm'r of Soc. Sec., 694 F.3d 287, 292 (3d Cir. 2012).

In determining whether there is substantial evidence to support the Commissioner's decision, the Court must consider "(1) the objective medical facts; (2) the diagnoses and expert opinions of treating and examining physicians on subsidiary questions of fact; (3) subjective evidence of pain testified to by [Plaintiff] and corroborated by family and neighbors; and (4) [Plaintiff's] educational background, work history, and present age." Holley v. Colvin, 975 F. Supp. 2d 467, 475 (D.N.J. 2013), aff'd 590 F. App'x 167 (3d Cir. 2014).

### B. The Five-Step Disability Test

Under the Social Security Act ("the Act"), disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). To determine whether a Plaintiff is disabled under the Act, the Commissioner applies a five-step test. 20 C.F.R. § 416.920. First, the Commissioner must determine whether the plaintiff is currently engaging in "substantial gainful activity." Id. "Substantial gainful activity" is work activity involving physical or mental

activities that are "usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 416.972. If the plaintiff is engaged in substantial gainful activity, then he or she is not disabled and the inquiry ends. Jones, 364 F.3d at 503.

Alternatively, if the Commissioner determines that the plaintiff is not engaged in substantial gainful activity, then the analysis proceeds to the second step: whether the claimed impairment or combination of impairments is "severe." 20 C.F.R. § 416.905(a). The regulations provide that a severe impairment is one that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c). If the claimed impairment or combination of impairments is not severe, the inquiry ends and benefits must be denied. See id.

At the third step, the Commissioner must determine whether the plaintiff's impairment or combination of impairments is of a severity to meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404 Subpart P Appendix 1. 20 C.F.R. § 416.920(d). If so, a disability is conclusively established and the plaintiff is entitled to benefits. Jones, 364 F.3d at 503. If not, the analysis proceeds.

Prior to the fourth step, the Commissioner must determine the plaintiff's "residual functional capacity" ("RFC") to perform work activities despite the limitations from the plaintiff's impairments. 20 C.F.R. §§ 416.920(e); 416.945. In considering a plaintiff's RFC, the Commissioner must consider "all the relevant medical and other evidence" in the Plaintiff's record. 20 C.F.R. § 416.920(e). Then, at step four, the Commissioner must decide if the plaintiff has the RFC to perform his past relevant work. 20 C.F.R. §416.920(f). If so, then the claim for benefits must be denied. 20 C.F.R. § 416.960(b)(3).

Finally, at the fifth step, if the plaintiff is unable to engage in past relevant work, the Commissioner must ask whether "work exists in significant numbers in the national economy that

[the Plaintiff] can do given [his] residual functional capacity and vocational factors." 20 C.F.R. § 416.960(c). The plaintiff bears the burden of establishing steps one through four. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The burden of proof shifts to the Commissioner at step five. Id.

## II.   BACKGROUND

### A.   Procedural History

On August 1, 2018, Plaintiff filed a Title II application for a period of DIB, alleging disability beginning May 15, 2016. Tr. 16, 77-78. Plaintiff alleged disability due to pain and symptoms associated with cervical degenerative disc disease, hypertension, and a history of substance abuse. Tr. 18, 57. The claim was initially denied on November 19, 2018, and again upon reconsideration on February 6, 2019. Tr. 63, 71-72. Thereafter, Plaintiff filed a written request for a hearing, which was received on February 11, 2019. Tr. 89. Plaintiff appeared and testified at a hearing before the ALJ on February 25, 2020, where a vocational expert ("VE") also testified. Tr. 28-55. On March 25, 2020, the ALJ concluded that Plaintiff was not disabled during the relevant period of May 15, 2016, the alleged disability onset date, through September 30, 2018, his date last insured ("DLI"). Tr. 22.

On February 10, 2021, the Appeals Council denied Plaintiff's request for review. Tr. 1. In response, Plaintiff commenced this civil action seeking review of the Commissioner's final decision.

### B.   General Background

Plaintiff is a fifty-four-year-old man, with a high school education and previous relevant work experience as a commercial cleaner and fast food worker. Tr. 19-20. Plaintiff does not take any prescription or over-the-counter pain medications. Tr. 20, 40. At the hearing, Plaintiff

complained of neck pain, right arm pain, lower back pain, and pain when turning his head. Tr. 36, 41. Plaintiff stated that he is able to dress, generally groom himself, and wash dishes. Tr. 35-37, 43. His daytime activities consist of resting and watching television. Tr. 40. Plaintiff reported limitations in his ability to sit, stand, walk, lift, and carry. Tr. 38-39. Plaintiff underwent surgical procedures for his back on April 19, 2019. Tr. 393-96.

In function reports completed on August 16, 2018—before the DLI—and January 9, 2019—after the DLI—Plaintiff described limited lifting, bending, reaching, walking, stair climbing, concentration, and using his hands. Tr. 197, 212. Plaintiff also detailed his ability to perform daily activities, including his ability to wake up, take care of his own personal hygiene, make and eat breakfast, walk to the store, and wash dishes without assistance. Tr. 193, 208. He explained that he has pain in his neck and arm and that he cannot work because of his injuries. Tr. 196. Furthermore, Plaintiff stated he can lift "maybe 10-15 pounds" and can walk an hour before needing a fifteen minute rest, or can walk about two miles. Tr. 198, 213. Plaintiff reported he does not currently use canes, crutches, or walkers to ambulate. Tr. 214. Plaintiff additionally reported he is able to pay attention for "as long as it takes" and can follow written and spoken instructions "very well." Tr. 198, 213. Plaintiff sought medical treatment from multiple providers both before and after his DLI.[1]

### C. ALJ Decision

The ALJ determined that Plaintiff was not disabled under the five-step framework. At step one, the ALJ concluded that Plaintiff did not engage in substantial gainful activity during the period of May 15, 2016 through the DLI of September 30, 2018. Tr. 18. At step two, the ALJ determined

---

[1] The parties have summarized the medical evidence in their briefs. See Pl. Br. at 6-10, ECR No. 13; Def. Br. at 2-5, ECF No. 27. The Court will address the medical evidence only where necessary for the adjudication of Plaintiff's claim in Section III, infra.

that through the DLI, Plaintiff's cervical degenerative disc disease qualified as a severe impairment. Id. The ALJ considered other impairments alleged by Plaintiff, including hypertension and a history of substance abuse, and determined they were not "severe" because they did not limit Plaintiff's ability to perform work-related activities, and were otherwise effectively controlled by medication or in a status of remission. Id. At step three, the ALJ found that none of Plaintiff's impairments, neither individually nor collectively, met or medically equaled the criteria of a listed impairment, as the record failed to establish medical signs, symptoms, or findings to meet or equal the criteria of any listed impairment. Tr. 19. Further, the ALJ found no evidence of extensive motor, sensory, or muscle loss in the record. Id.

Before moving on to step four, the ALJ found Plaintiff's RFC to be as follows:

> [T]hrough the date last insured, the Plaintiff had the residual functional capacity to perform a restricted range of light work, as defined in 20 CFR 404.1567(b), since he was able to sit for 6 hours, stand/walk for a total of 6 hours, lift/carry 20 pounds occasionally and 10 pounds frequently, and perform occasional overhead reaching with the dominant right upper extremity. He would require a job with no rapid repetitive neck movements from side to side.

Id. In reaching this determination, the ALJ evaluated the totality of the evidence in the record, including objective medical reports, medical opinion evidence, and Plaintiff's testimony. The ALJ found that although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence on the record. Tr. 21. Further, while Plaintiff had limitations prior to the DLI resulting from cervical degenerative disc disease, the ALJ noted that he was able to perform light work that contradicted his medically perceived limitations. Tr. 21-22.

At step four, the ALJ found that Plaintiff was unable to perform relevant past work. Tr. 22. At step five, the ALJ concluded that a significant number of jobs in the national economy exist that Plaintiff can perform. Tr. 21-22. The ALJ reached this conclusion with the assistance of a VE, who evaluated Plaintiff's limitations, age, RFC, education, and work experience and determined that the jobs available to Plaintiff included handpacker, sorter, or assembler. Tr. 22-23. Thus, the ALJ concluded that Plaintiff was not disabled for the relevant period within the meaning of the Act. Id.

### III.  ANALYSIS

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ improperly considered the medical opinion of Plaintiff's pain management physician, Dr. Jonathann Kuo, M.D. ("Dr. Kuo"). Pl. Br. at 13, ECF No. 13. The Court disagrees.

An RFC should account for the most activity that a claimant can perform despite his limitations. 20 C.F.R. § 404.1545(a). The ALJ is ultimately responsible for making an RFC determination based on the medical evidence, and must "include a narrative discussion describing how the evidence supports each conclusion." Harris v. Comm'r of Soc. Sec., No. 09-3219, 2010 WL 2874352, at *6 (D.N.J. July 19, 2010) (citing Social Security Ruling 96-8p). An ALJ's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020). In appealing an ALJ's determination, Plaintiff has the burden of explaining how "the error to which he points could have made any difference." See Holloman v. Comm'r Soc. Sec., 639 F. App'x 810, 814 (3d Cir. 2016) (internal quotation marks and citation omitted).

Here, the ALJ considered medical records from multiple treating physicians and other sources. The ALJ first considered Plaintiff's own testimony about his capabilities and past relevant

7

work. Tr. 19-20.  He then considered diagnoses and treatment notes from Community Health Care from 2017, which revealed neck and back pain and ankle swelling, but also revealed normal sensation and strength.  Tr. 20, 295-326.  The ALJ acknowledged Plaintiff's X-Rays reportedly showed discogenic changes, Plaintiff's complaints of chronic neck and arm pain, and Plaintiff's referral to an orthopedic surgeon.  Tr. 20.  The ALJ also specifically considered Dr. Kuo's treatment notes, Plaintiff's eventual surgery in April 2019, and Plaintiff's treatment notes post-surgery.  Id.  The ALJ finally discussed Plaintiff's October 2018 consultative physical examination with Dr. Merlin, as well as the medical opinions of Dr. Kuo and the state agency consultants, and ultimately determined that, based on the record as a whole, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record and that he was able to perform light work prior to the DLI with certain limitations.  Tr. 21.

Viewing the ALJ's decision and the record as a whole, the Court concludes that the ALJ provided substantial evidence to support the RFC determination.  Plaintiff's arguments to the contrary are unavailing.

Plaintiff argues that the ALJ failed to properly discuss the relevant regulatory factors—supportability and consistency—when discounting Dr. Kuo's March 8, 2019 medical opinion (the "March Opinion").  Specifically, Plaintiff asserts that "the ALJ's consideration of the supportability and consistency factors with respect to Dr. Kuo's opinion was limited to the conclusory statement that treatment notes through 2019 reflected objective findings of 'some limitations in cervical range of motion,' but also normal strength and reflexes." Pl. Br. at 16-17 (quoting Tr. 21).  The Court disagrees and finds that the ALJ appropriately considered Dr. Kuo's March Opinion pursuant to the regulatory factors.

8

In evaluating medical opinion evidence, the ALJ considers statements from medical sources "about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions.  20 C.F.R. § 404.1513(a)(2).  The ALJ must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the plaintiff's own] medical sources." 20 C.F.R. § 404.1520c(a).[2]  The ALJ is not required to articulate how each individual medical opinion or prior finding was considered. Section 404.1520c(b)(1).

Supportability and consistency are the most important factors in evaluating a medical opinion's persuasiveness.  Section 404.1520c(b)(2).[3]  In evaluating supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." Section 404.1520c(c)(1).  In evaluating consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." Section 404.1520c(c)(2); see also Patricia L. v. Kijakazi, 20-6736, 2021 WL 5356113, at *9 (D.N.J. Nov. 17, 2021) (finding the ALJ sufficiently considered the supportability and consistency factors when he found the doctor's assessment "not at all persuasive; [] not

---

[2] For claims filed on or after March 27, 2017, the rules from 20 C.F.R. § 404.1520c ("Section 404.1520c") apply in determining how to consider and articulate medical opinions and prior administrative medical findings.

[3] An ALJ may, but is not required to, explain how he or she considered the factors in Section 404.1520c(c)(3) through (c)(5).

9

supported by [] treatment notes, and [] inconsistent with the record as a whole" and cited to contradictory exhibits).

Here, after summarizing Dr. Kuo's objective findings and treatment, the ALJ specifically considered Dr. Kuo's opinion and found it "totally unpersuasive," reasoning as follows:

> On March 8, 2019, post the date last insured by 6 months, Dr. Jonathann Kuo, opined that the claimant would be off task 25% of the day and is able to concentrate for 15 minutes. Dr. Kuo opined that the claimant is limited to less than sedentary work and is able to sit, stand and walk for up to 1 hour, needs a cane, and can do occasional reaching, handling and fingering. This is prior to the cervical fusion in April 2019 (Ex. 6F). This opinion is totally unpersuasive. No records prior to the date last insured indicates any limitations in sitting or standing, need for use of a cane, or limitations in handling or fingering. In addition, no measure is taken of the limitations in concentration or being off-task, as these are grossly exaggerated for the period prior to the date last insured. Additionally, records prior to the surgery from surgeons (Ex. 12F) noted no limitations in walking and some limitations in cervical range of motion, but motor strength was normal and all deep tendon reflexes were normal. The claimant had difficulty reaching with his right arm due to pain and records post-surgery in December 2019. Exhibit 10F, page 8, notes full cervical rom but decreased abduction of right shoulder, which is taken into account in the residual functional capacity.

Tr. 21.

As noted above, the ALJ discussed Dr. Kuo's medical records supporting his medical opinion and noted a lack of support for Dr. Kuo's stated limitations prior to the DLI. The ALJ also cited to numerous other medical records in the record that are inconsistent with Dr. Kuo's findings, including from Plaintiff's physical examination in October 2018, which revealed no limitations in strength, sitting, standing, or walking. Tr. 21. In discussing both Dr. Kuo's records and other medical evidence in the record, the ALJ appropriately addressed Dr. Kuo's March Opinion in line with the supportability and consistency factors. See, e.g., Patricia L., 2021 WL 5356113, at *9, 13 (collecting cases) (finding the ALJ specifically considered the supportability

10

and consistency factors by explaining why the claimant's doctor's treatment notes and other evidence in the record rendered his opinions regarding the claimant's limitations as unpersuasive); David K. v. Kijakazi, No. 20-12419, 2022 WL 225451, at *7 (D.N.J. Jan. 26, 2022) (finding no error in the ALJ's consideration of the supportability and consistency factors).

Plaintiff further challenges the ALJ's consideration of Dr. Kuo's March Opinion, arguing that his treatment notes support his opinion and that the ALJ failed to fulsomely discuss the record. However, the Court finds this argument unavailing, as the ALJ considered Dr. Kuo's treatment notes but cited contradictory evidence as the basis for his RFC determination. David K., 2022 WL 225451, at *8 (quoting Johnson v. Comm'r of Soc. Sec., 497 F. App'x 199, 201 (3d Cir. 2012)) ("[T]he Court 'will uphold the ALJ's decision even if there is contrary evidence that would justify the opposite conclusion, as long as the substantial evidence standard is satisfied.'").

For example, notwithstanding Dr. Kuo's opinion that Plaintiff required the use of a cane to ambulate effectively for more than one to two blocks and could not sit, stand, or walk for more than an hour in a work day, see Tr. 378-82, Plaintiff in fact testified at the February 2020 hearing that he has never used a cane, Tr. 44, and submitted in August 2018 that he can walk for an hour and in January 2019 that he can walk for about two miles before needing to stop and rest, Tr. 198, 213. Plaintiff also told Dr. Merlin in October 2018, a date closer to the DLI than Dr. Kuo's medical opinion assessment, that he is able to walk one mile, Tr. 343. In addition, a state agency physician opined on February 6, 2019, that Plaintiff could sit, stand, and walk for six hours, Tr. 69, an opinion the ALJ found to be fully persuasive and based on records regarding range of motion both before and after the DLI. Tr. 21. That same physician ultimately determined that Plaintiff was not disabled for purposes of disability benefits but could instead complete light work. Tr. 70.

11

Similarly, Dr. Kuo's conclusion that Plaintiff could never lift or carry ten pounds or more and could rarely lift or carry less than ten pounds is also belied by Plaintiff's own testimony that he can lift ten to fifteen pounds. Tr. 37, 213. The state agency physician also opined that Plaintiff could lift and carry ten pounds frequently and twenty pounds occasionally, Tr. 69, which is ultimately in line with the RFC. Although Dr. Kuo opined that Plaintiff could "rarely" or "never" use his right arm and hand, and only "occasionally" use his left arm and hand, Plaintiff's consultation with Dr. Merlin—closer in time to the DLI—showed that Plaintiff's grasping strength and manipulative limitations were not impaired and that he was working as a dishwasher at that time, Tr. 343-44.

Finally, with regard to Dr. Kuo's opinion that Plaintiff will be "off task" for greater than 25% of the day, and cannot maintain attention for more than fifteen minutes, Plaintiff himself stated he can pay attention for "as long as it takes until it's over," that he can follow written and spoken instructions "very well," and that he finishes what he starts. Tr. 213; see also Tr. 198. Plaintiff points to no evidence in the record supporting Dr. Kuo's conclusion, even from Dr. Kuo's own treatment notes. See, e.g., Holley, 975 F. Supp. 2d at 482 (upholding ALJ decision where the plaintiff did not point to anything in the medical record which stated any such limitations associated with her alleged impairment).

In sum, while record evidence indeed supports parts of Dr. Kuo's medical opinion, the Court finds that the ALJ considered the supportability and consistency factors in line with the applicable regulations and that the ALJ's RFC determination is supported by substantial evidence.

### IV. CONCLUSION

For the foregoing reasons, the determination of the Commissioner is **AFFIRMED.**

Date: August 31, 2022

/s Madeline Cox Arleo
**Hon. Madeline Cox Arleo**
**UNITED STATES DISTRICT JUDGE**